UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EILEEN POLIZZI, FUND MANAGER ) <br> of the TEAMSTERS LOCAL 404 ) <br> HEALTH SERVICES AND INSURANCE PLAN, ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> N&B EXPRESS, INC. and JAMES CAPELLI ) <br> Defendants, ) <br> ) <br> and ) <br> ) <br> BANK OF WESTERN MASSACHUSETTS, ) <br> Trustee. ) | CIVIL ACTION NO. <br><br> 05-30183-MAP |

### Affidavit Of Ronald Easton In Support Of Application For A Temporary Restraining Order Or Approval Of Attachment On Trustee Process

1.  My name is Ronald Easton. I am the Vice President and a Business Agent for Teamsters Local Union No. 404 ("Local 404"). I have a usual place of business at 115 Progress Avenue in Springfield, Massachusetts.

2.  As business agent, my duties include the negotiation, administration, and enforcement of collective bargaining agreements between Teamsters Local Union No. 404 and employers whose employees are represented in collective bargaining by Local 404.

3.  I am responsible, on behalf of Local 404, for the bargaining unit employed by N & B Express, Inc. ("the Company") at its facility which is located at 20 Industrial Drive West in Springfield, Massachusetts. Prior to June 30, 2005, the Company employed approximately sixty (60) members of Local 404.

4.  The company and the Union are parties to a collective bargaining agreement, which is effective by its own terms for the period from August 1, 2004 to July 31, 2007. A copy of the signature page of that agreement is allocated as Exhibit 1.

5. The agreement requires the Company to make monthly contributions to that employee benefit fund for each hour pay is due or received by an employee at the state hourly rate of $4.9125, for employees covered by or performing work within the scope of the agreement. A true copy of Appendix C is attached hereto as Exhibit 2.

6. The Company has not made contributions to the plan for the period from January 1, 2005 to June 30, 2005 despite its having continued operations up until June 30, 2005. Furthermore, an audit of the Company's payroll records revealed that the company had underreported its hours to the Fund between January 1, 1999 and December 31, 2003 and failed to make required contributions for those underreported hours.

7. The Company owes the Fund an estimated $360,000.00 in delinquent contributions for the period from January 1, 2005 to the present and an additional $15,258.95 for the audit delinquency.

8. Because the Fund was not able to secure the contributions owed it for the payroll hours reflected in the audit delinquency and the payroll hours for the period from January 1, 2005 to June 30, 2005, employees in the bargaining unit have lost eligibility for health insurance benefits that they would have otherwise enjoyed for the next six months.

9. The Fund has no insurance that would serve to satisfy the judgment in its favor or security to accomplish that result. I am very concerned that unless the court enjoins the company from continuing to dispose of the proceeds of a sale of assets, the company will transfer or otherwise dispose of them and render the delinquency stated above uncollectible. If that occurs, employees will continue to have no health benefits coverage.


Signed under the pains and penalties of perjury this 5th day of August 2005.

_____
Ronald Easton

f:\l404hsip\n&bexpressinc\pldg\pldg\aff.supp.trustee.process.ron.easton.doc:blg

Exhibit 1

EXHiBiT-1

This Addendum and all appendixes are subject to approval of TNFINC and ratification by the members employed by N&B Express. The Union's negotiating committee has unanimously agreed that it will recommend that the bargaining unit ratify this Agreement.

Date 12/08/04

Teamsters Local Union No. 404

Ronald W. Easton
*[signature]*

Robert Lapinski
*[signature]*

N&B Express Inc.

James T. Cappelli
*[signature]*

Peter Mannheim
*[signature]* — VP Operations

Norman Desmarais
*[signature]*

Appendix "A"   Vermont/New Hampshire Operation
Appendix "B"   Main Operation
Appendix "C"   N&B Health/Welfare and Pension Language

6.

**EXHIBIT 2**

# EXHIBIT-2

## APPENDIX B
## N&B MAINE OPERATION

Through the duration of this Agreement, the Company may elect to peddle the area known as "the Lewiston/Auburn area" on an opportunistic basis. There would have to be at lest ten (10) deliveries or viable revenue, proximity to I-95 & I-295, and available manpower. It would serve no economic benefit to the Company to run excess miles and hours to service for a few deliveries with low revenue yield.

It is not the intent of the Company to develop this area for a daily run from South Deerfield, MA. Unless viable. The long term plan is to complete the 1997 proposed change of operations. This will involve establishing an operating agreement with Local 340.

Driver Daily Log Book records are evidence of the area service by N&B drivers on a daily basis. These records are kept by the driver by month. If the driver cannot supply the Local with these records, the Company has permanent file copies that could be offered as substitutes. Portland Air Freight delivery manifests are kept on file for approximately one (1) year and would be available for review if the need arises.

The Company currently uses N&B personnel to service the greater Portland, ME area and uses Portland Air freight to handle overflow situations. This is the only currently economic method to ensure one hundred percent (100%) on-time service and pick-up coverage. A change of operation would allow the Company to use Local 404 and 340 employees to cover this area one hundred percent (100%) of the time.

## APPENDIX C
## HEALTH/WELFARE AND PENSION
## HOURLY RATES

|  | Health/Welfare | Pension |
|---|---|---|
| August 1, 2004 | $4.9125 | $4.66 |
| August 1, 2005 | $4.9125 | $4.86 |
| August 1, 2006 | $5.00 | $5.06 |
| April 1, 2007 |  | $5.26 |

These rates apply for all hours worked in a given work week up to a maximum of forty (40) hours per week, per employee.

5.